IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAMAH K. GROSVENOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 05-033-GMS |
| | ) |
| THOMAS CARROLL, WARDEN, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

Plaintiff Jamah K. Grosvenor ("Grosvenor"), a prisoner incarcerated at Delaware Correctional Center ("DCC"), Smyrna, Delaware, brings this lawsuit pursuant to 42 U.S.C. § 1983. He appears *pro se* and was granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (D.I. 4.) The court now proceeds to review and screen the complaint pursuant to 28 U.S.C. § 1915 and § 1915A.

**I.    THE COMPLAINT**

Suit is brought against defendants Warden Thomas Carroll ("Warden Carroll"), Captain Joseph Ballinger ("Cpt. Ballinger"), Deputy Warden Elizabeth Burris ("Deputy Warden Burris"), Multi-Disciplinary Team member Jim Simms, ("Simms"), Multi-Disciplinary Team member Jane/John Doe 1 (" Doe 1"), Multi-Disciplinary Team member Jane/John Doe 2 ("Doe 2"), Institution Base Classification Committee member Evelyn Stevenson ("Stevenson"), Institution Base Classification Committee member Jane/John Doe 3 ("Doe 3"), Institution Base Classification Committee member Jane/John Doe 3 ("Doe 4"), and the Department of Correction (Delaware Correctional Center) ("DCC").

On May 31, 2005, Grosvenor and several other inmates witnessed a confrontation

between C/O Carlton Adams ("C/O Adams") and inmate Vincent Quattlebaum. Grosvenor alleges that he and the other inmate witnesses tried to explain to the correction officers who came to the scene that C/O Adams failed to follow proper procedures. Grosvenor alleges that when the officers ignored them, they asked to see a lieutenant corrections officer, but Sgt. C/O Sullivan arrived and urged the inmates to go to the chow-hall for lunch. After lunch, all Medium-High Housing Unit ("MHU") inmates were escorted to the MHU building and 13 of the inmates were identified by C/O Adams. Grosvenor was 1 of the 13 inmates. Captain Ballinger ordered Grosvenor handcuffed. Grosvenor alleges that he was taken to a visiting room where he remained for three hours. Later, he was among 6 of the 13 inmates transferred to isolation confinement located in the Security Housing Unit ("SHU"). Grosvenor alleges that he was taken to SHU in retaliation for speaking out against C/O Adams' failure to follow DCC rules, regulations, and property procedures. He further alleges that under DCC inmate rules and the First Amendment he has the right to free speech.

     Grosvenor next alleges that Cpt. Ballinger and Warden Carroll ordered his transfer to isolation without a write-up or disciplinary report. He alleges that DCC rules require inmates be given notice of a transfer to isolation. Grosvenor remained in isolation for 11 days and he alleges that during this time he was not notified of any charges being brought against him, he was not provided with an opportunity to make a statement, nor was a preliminary hearing held within 72 hours. Grosvenor alleges that until a hearing was held he was entitled to remain in his MHU classification unless he engaged in certain prohibited conduct. Grosvenor alleges that he had a right to a due process determination that he engaged in the prohibited conduct, and he was deprived of that right. He also alleges that Warden Carroll reviewed his stay in isolation, and

that the warden failed to have him transferred to MHU when he did not receive the hearing within the allotted time period.

Grosvenor alleges that as a result of his stay in isolation he lost his spot in a stress management group, and he lost his opportunity to obtain a job in the MHU kitchen. Further, he alleges that those opportunities would have resulted in his obtaining good time credits for an earlier release, and would have reduced the points on his institutional classification record which would have resulted in his transfer to general population.

Grosvenor alleges that on June 10, 2004, the Classification Committee ("Committee)" transferred him to SHU. The Committee is composed of the Multi Disciplinary Team ("MDT") and the Institutional Base Classification Committee ("IBCC"). Jim Simms, Doe 1, and Doe 2 are members of the MDT while the IBCC members are Stevenson, Doe 3, and Doe 4. Grosvenor alleges that his placement in SHU was based upon a false or invalid disciplinary report and transfer order, all in violation of his right to due process and his First Amendment rights. He also alleges that there was a retaliatory fabrication of his prison records in violation of the Privacy Act and a retaliatory reclassification and transfer in violation of his First Amendment rights.

Grosvenor alleges that the Classification Committee's records are inaccurate. He alleges that he sent several letters concerning the inaccurate record to Simms who, in addition to being a MDT member, is also Grosvenor's counselor, but Simms did not respond. Grosvenor next alleges that he filed a grievance with Deputy Warden Elizabeth A. Burris ("Deputy Warden Burris"), but rather than handle the situation herself, she referred it to Treatment Administrator Ron Hosterman ("Hosterman").

Grosvenor was reclassified in August 2004, again to SHU. Grosvenor alleges that he has

only 16 points, but that Simms advised Grosvenor he had 18 points which indicated a SHU housing classification. Grosvenor was classified once again on November 11, 2004, again remaining at SHU. He alleges that the Committee did not give him a reason for its decision that he remain in SHU, and the information is forged or falsified. Grosvenor alleges that he was not due for reclassification until April 2005.

## II. STANDARD OF REVIEW

When a litigant proceeds *in forma pauperis,* 28 U.S.C. § 1915 provides for dismissal under certain circumstances. When a prisoner seeks redress in a civil action, 28 U.S.C. § 1915A provides for screening of the complaint by the court. Both 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1) provide that the court may dismiss a complaint, at any time, if the action is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant immune from such relief. An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

The court must "accept as true factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996)(citing *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir. 1993)). Additionally, *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim when "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## III. ANALYSIS

### A. **Pleading Deficiency**

The allegations against Deputy Warden Burris are that rather than personally handle Grosvenor's complaints, she referred the matter to Hosterman. When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988).

As is well established, supervisory liability cannot be imposed under § 1983 on a respondeat superior theory. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). "'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'" *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement can be shown through allegations that a defendant directed, had actual knowledge or acquiesced in, the deprivation of a plaintiff's constitutional rights. *Id.; see Monell v. Department of Social Services* 436 U.S. 658, 694-95 (1978). Supervisory liability may attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk, or the supervisor's actions and inactions were "the moving force" behind the harm suffered by the plaintiff. *Sample v. Diecks,* 885 F.2d 1099, 1117-118 (3d Cir. 1989); *see also City of Canton v. Harris*, 489 U.S. 378 (1989); *Heggenmiller v. Edna Mahan Corr. Inst. for Women,* No. 04-1786, 128 Fed.Appx. 240 (3d. Cir. 2005).

Quite simply, Grosvenor has stated no claim against Deputy Warden Burris nor has

he alleged any violation of his constitutional rights by Burris. His only complaint is that she did not personally handle his complaint, but that she referred the matter to another prison employee. There is nothing in the complaint to indicate that Deputy Warden Burris was the "moving force [behind]" any constitutional violation. To the contrary, Grosvenor states that when he complained, Deputy Warden Burris took action and referred the matter to Hosterman to handle. Based upon the foregoing, the claim against Deputy Warden Burris is dismissed for failure to state a claim upon which relief may be granted.

### B.     Due Process

Grosvenor alleges a violation of his right to due process because he was placed in isolation without a hearing and this resulted in lost job opportunities and a spot in the stress management group. He also alleges his right to due process was violated when he was transferred from MHU to SHU. He alleges his placement in SHU is based upon a false or invalid disciplinary report or transfer order.

At the outset, it is noted that the filing of a false disciplinary charge and related disciplinary sanction do not, without more, violate due process. *See Smith v. Mensinger*, 293 F.3d 641, 653-54 (3d Cir. 2002). In reviewing an alleged due process violation, it must be determined whether the alleged violation implicates a constitutionally protected property or liberty interest. *See Sandin v. Conner*, 515 U.S. 472 (1995). "Liberty interests protected by the Fourteenth Amendment may arise from two sources-the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466 (1983). In a prison setting, states may create protected liberty interests. These interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to

protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 484 (internal citations omitted). First to be determined is whether the sanction constitutes an "atypical and significant hardship." *Chapman v. Dudlek*, No. 95-73-SLR, 1997 WL 309442, at *3 (D. Del. April 18, 1997). If the sanction rises to that level, the court must then review the relevant procedure to determine its sufficiency under the Due Process Clause." *Id.*

In this case, Grosvenor alleges that his placement in isolation without a hearing violated his due process rights. Yet, neither Delaware law nor DCC regulations create a liberty interest in a prisoner's classification within an institution. *See* Del. Code Ann. 11, § 6529(e). Indeed, "'[a]s long as the conditions or degree of confinement to which [a] prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.'" *Hewitt*, 459 U.S. at 468 (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)). It has thus been determined that the transfer of a prisoner from one classification is unprotected by "'the Due Process Clause in and of itself,'" even though the change in status involves a significant modification in conditions of confinement. *Hewitt*, 459 U.S. at 468 (citation omitted); *Moody v. Daggett,* 429 U.S. 78 (1976) *see also Lott v. Arroyo*, 785 F.Supp. 508, 509 (E.D.Pa. 1991) (plaintiff transferred from group home to correctional facility had no constitutionally enforceable right to participate in work release program); *Brown v. Cunningham,* 730 F.Supp. 612 (D.Del.1990) (plaintiff's transfer from general population to administrative segregation, without being given notice and opportunity to challenge it, was not violation of plaintiff's liberty interest). Accordingly, the decision to place Grosvenor in isolation cannot be

viewed as falling outside the scope of "the sentence imposed upon him [or] otherwise violative of the Constitution." Similarly, his transfer from MHU to SHU is not violative of the Constitution. Other than his complaints of lost opportunities, Grosvenor makes no allegations that his placement in isolation imposed an "atypical or significant hardship on [him] in relation to the ordinary incidents of prison life" so as to impinge upon his protected liberty interests.

Moreover, neither Delaware law nor any other authority creates a liberty interest in the right to participate in a work or education program. *See James v. Quinlan,* 866 F.2d 627, 629-30 (3d Cir.1989). Therefore, as to these allegations Grosvenor's cannot state a claim a claim for violation of a liberty interest created by the Due Process Clause or State law.

Based upon the foregoing, Grosvenor's due process claims have no arguable basis in law or in fact and are dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

C.  **Eleventh Amendment**

Grosvenor names as a defendant the DCC. This entity, as an agency of the State of Delaware is immune from suit pursuant to the Eleventh Amendment. "Absent a state's consent, the Eleventh Amendment bars a civil rights suit in federal court that names the state as a defendant." *Laskaris* v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981) (citing *Alabama v. Pugh,* 438 U.S. 781 (1978)). The State of Delaware has not waived its sovereign immunity under the Eleventh Amendment. *See Ospina v. Department of Corr.,* 749 F.Supp. 572, 579 (D.Del. 1991). Hence, as an agency of the State of Delaware, the DCC is entitled to immunity under the Eleventh Amendment. *See e.g. Evans v. Ford,* C.A. No. 03-868-KAJ, 2004 WL 2009362, *4 (D.Del. Aug. 25, 2004) (claim against DOC is dismissed on the basis of Eleventh Amendment

8

immunity).

Grosvenor's claim against the DCC has no arguable basis in law or in fact inasmuch as it is immune from suit. Therefore, the claim is frivolous and is dismissed pursuant to 28 U.S.C.§ 1915A(b).

### D.     Retaliation/Free Speech

Liberally construing the complaint, Grosvenor alleges that Cpt. Ballinger, Warden Carroll, and the members of the Multi-Disciplinary Team and the Institutional Base Classification Committee retaliated against him by sending him to isolation, and ultimately SHU, for speaking out against what he believed were C/O Adams' improper procedures. "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon,* 897 F.2d 103, 111-12 (3d Cir. 1990). It has long been established that the First Amendment bars retaliation for protected speech. *See Crawford-El v. Britton,* 523 U.S. 574, 592 (1998); *Milhouse v. Carlson,* 652 F.2d 371, 373-74 (3d Cir. 1981). Proof of a retaliation claim requires that Grosvenor demonstrate (1) he engaged in protected activity; (2) he was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *Anderson v. Davila,* 125 F.3d 148, 160-61 (3d Cir. 1997) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U . S. 274 (1977); *see also Allah v. Seiverling,* 229 F.3d 220, (3d Cir. 2000) (a fact finder could conclude that retaliatory placement in administrative confinement would "deter a person of ordinary firmness from exercising his First Amendment rights" (citations omitted)).

Applying the retaliation standard and construing the complaint liberally, Grosvenor has

9

stated a claim of retaliation for his exercise of a First Amendment right. Indeed, in light of his assertions, it may be inferred that he was the object of retaliation because of speaking out against what he perceived to be improper procedures by C/O Adams. Therefore, Grosvenor will be allowed to proceed with the retaliation claims.

In a separate order the court will direct service upon Jim Simms and Evelyn Stevenson. The order will direct Simms and Stevenson to identify for the plaintiff the Doe members of the Multi-Disciplinary Team and the Doe members of the Institutional Base Classification Committee, as soon as possible after the complaint is served. When Grosvenor learns the identity of the Doe Defendants, he shall immediately move the court for an order directing amendment of the caption and service of the complaint on them. *See Borges v. Administrator for Strong Mem'l Hosp.*, No. 99-6351FE, 2002 WL 31194558, at *1 n.1 (W.D.N.Y. Sept. 30, 2002). *See also Searcy v. Dallas Police Dep't*, No. 3:01-0687-P, 2001 WL 611169 (N.D. TX May 31, 2001).

## IV. CONCLUSION

For the above stated reasons, the court finds that the claims against Deputy Warden Burris and the DCC as currently plead, are factually and legally frivolous making their dismissal appropriate. Grosvenor is allowed to proceed with his retaliation claims against the remaining defendants. An appropriate order will be entered.

_____
UNITED STATES DISTRICT JUDGE

March 30, 2006
Wilmington, Delaware