IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAMAH K. GROSVENOR, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) C.A. No. 05-033-GMS |
|    v. | ) |
| | ) |
| THOMAS CARROLL, et al., | ) |
| | ) |
|    Defendants. | ) |

### DEFENDANTS' ANSWERS TO PLAINTIFF'S INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

Come now, State Defendants by and through the undersigned counsel and respond to the Plaintiff's First Set of Interrogatories and Production of Documents. The responses reflect the Defendants' present knowledge of the matters covered herein and their best efforts to ascertain information responsive to the requests as follows:

### GENERAL OBJECTIONS

1. Defendants object to the Interrogatories/Production of Documents to the extent that they seek documents protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

2. Defendants object to the Interrogatories/Production of Documents to the extent they seek documents equally available to the Plaintiff.

3. State Defendants' specific denials or objections to the interrogatories requested are based on attorney discussions with State Defendants along with documents and information produced on behalf of State Defendants and provided to plaintiff. Moreover,

State Defendants reserve the right to supplement responses with any additional information obtained or discovered subsequent to the responses.

### ANSWERS

1. State the names, last known addresses of all persons who have direct knowledge of or were eyewitnesses to facts alleged in the complaint, noting specifically the eye-witnesses.

**Answer**: See incident and disciplinary reports and records relative to the subject-matter in the complaint, as well as any grievance records that may have been filed.

2. Give the names and last known addresses of all persons other than those listed in the answer to interrogatory number 1, who have knowledge of the allegations stated in the complaint.

**Answer**: None at this time. Defendants reserve the right to supplement this response, if necessary.

3. Give the names and last known addresses of all other persons who have knowledge of any facts alleged in any party's pleadings other than those persons named in the answer to the interrogatories 1 and 2.

**Answer**: None at this time. Defendants reserve the right to supplement this response, if necessary.

4.	State the specific steps that DCC's Multi-Disciplinary Team (MDT) and the Institution-Based Classification Center (IBCC) took to insure that the information they relied on to transfer and classify Plaintiff to the SHU was correct and accurate.

**Answer**:  Defendants Carroll, Stevenson, and Belanger had no personal knowledge. Defendant Simms was not a member of the Multi-Disciplinary team action preceding the I.B.C.C. decision to approve Maximum Security Housing Unit placement of plaintiff. However, refer to incident and disciplinary reports and records provided and which describe plaintiff's verbally abusive, agitated, non-compliant and disorderly conduct.

5.	State the reasons, in detail, why defendants Carroll and Ballenger did not provide Plaintiff with an opportunity to present his views to them before being transferred to isolation confinement/pre-hearing detention on May 31, 2004.

**Answer**: Defendant Carroll had no personal involvement with plaintiff's transfer to isolation. Defendants Stevenson and Simms had no personal knowledge. However refer to administrative transfer documents and inmate opportunity to provide a written statement in response to the action.

6.	State the reasons, in detail, why Plaintiff remained in isolation confinement/pre-hearing detention for 11 days, (more the two-thirds the maximum time allowed pursuant to the correction code of Penal Discipline) without being provided notice of any disciplinary charges against him or an opportunity to tell his side or version of facts to defendants Ballenger and Carroll.

**Answer**: Defendant Carroll had no personal involvement with plaintiff's transfer to isolation. Defendant Stevenson had no personal involvement or knowledge. Defendant Belanger's assigned duties as a Shift Commander required separation of the inmate from the general population when the inmate's continued presence became a threat to staff, and the security or orderly operation of the institution. Refer to incident reports and administrative transfer documents, including inmate opportunity to provide a written statement and which describe plaintiff's verbally abusive, agitated, non-compliant and disorderly conduct. Defendant Simms was not a member of the Multi-Disciplinary team action preceding the I.B.C.C. decision to approve Maximum Security Housing Unit placement of plaintiff.

7. State the reports, memorandums, records, and information relied upon by MDT to recommend that Plaintiff be classified to SHU.

**Answer**: See inmate incident, classification, disciplinary reports and records provided.

8. State the reports, memorandums, records, and information that the IBCC relied upon to approve the MDT's recommendation that the Plaintiff be classified to SHU.

**Answer**: See inmate incident, classification, disciplinary reports and records provided.

9. State who directed the MDT and IBCC to classify Plaintiff on June 22, 2004, August 2004, and November 9, 2004 when Plaintiff's classification review was not scheduled until April 1, 2005, and why.

**Answer**: Defendants Carroll and Stevenson had no personal knowledge or involvement with the plaintiff's classification decision at times relevant to the complaint. However, see incident, classification, disciplinary reports and records provided and which describe plaintiff's verbally abusive, agitated, non-compliant and disorderly conduct.

10.     State why, in detail, the IBCC stated that Plaintiff was classified to SHU because of "pending disciplinary action" on June 22, 2004, even though Plaintiff was never served with notice of charges or given an arraignment.

**Answer**:  State Defendants Carroll and Stevenson had no personal knowledge or involvement with the inmate's classification decision at times relevant to the complaint. However, see incident, classification, disciplinary reports and records provided and which describe plaintiff's verbally abusive, agitated, non-compliant and disorderly conduct.

11.     State the reasons, in detail, why the IBCC did not state a reason for approving or classifying Plaintiff to SHU "continue max" on November 9, 2004, even though Plaintiff still hadn't received a write-up or been given a hearing, after originally classifying him for "pending disciplinary hearing" on June 22,2004.

**Answer**: Defendants Carroll and Stevenson had no personal knowledge or involvement with the inmate's classification decision at times relevant to the complaint. However, see incident, classification, disciplinary reports and records provided and which describe plaintiff's verbally abusive, agitated, non-compliant and disorderly conduct.

12.     State why MDT recommended Plaintiff be classified to SHU on June 22, 2004, August 2004, and November 9, 2004.

**Answer**:  Defendants Carroll and Stevenson had no personal knowledge or involvement with the inmate's classification decision at times relevant to the complaint. However, see incident, classification, disciplinary reports and records provided and which describe plaintiff's verbally abusive, agitated, non-compliant and disorderly conduct.

13.     State why, in detail, IBCC did not answer Plaintiff's classification appeal or letter.

**Answer**:  Defendants Carroll and Stevenson had no personal knowledge or involvement with the inmate's classification decision at times relevant to the complaint. However a review of plaintiff's institutional records reveals that there is no appeal regarding the May 31, 2004 incident and the Plaintiff's subsequent classification to a higher security level.

14.     State who ordered Plaintiff's transfer to SHU on June 10, 2004.

**Answer**: Defendants Carroll, Stevenson and Simms had no personal knowledge or involvement with the inmate's classification decision on June 10, 2004. However, see incident, classification, disciplinary reports and records provided and which describe plaintiff's verbally abusive, agitated, non-compliant and disorderly conduct.

15.     State, in detail, why the MDT and IBCC classified Plaintiff to SHU on June 22, 2004, August 2004, and November 9, 2004 before he was served with a notice of charges against him and prior to a hearing on any charges.

**Answer**: Defendants Carroll and Stevenson had no personal knowledge or involvement with the inmate's classification decision at times relevant to the complaint. Defendant Belanger's assigned duties as a Shift Commander required separation of the inmate from the general population when the inmate's continued presence became a threat to staff, and the security or orderly operation of the institution. Refer to incident reports and administrative transfer documents, including inmate opportunity to provide a written statement and which describe plaintiff's verbally abusive, agitated, non-compliant and disorderly conduct.

16.    State the full names of the members of the MDT and IBCC classification committees who facilitated Plaintiff's classification to the SHU on May 6, 2004.

**Answer**: State Defendants Carroll, Simms and Stevenson had no personal knowledge or involvement with the inmate's classification decision on May 6, 2004. However, see the classification scoring sheet and recommendation provided to plaintiff.

17.    Explain or state the reports, memorandums, records, or information defendants Carroll and Ballenger relied upon to transfer Plaintiff to isolation-confinement/pre-hearing detention on May 31, 2004.

**Answer**: Defendant Carroll had no personal knowledge. Defendant Belanger's assigned duties as a Shift Commander required separation of the inmate from the general population when the inmate's continued presence became a threat to staff, and the security or orderly operation of the institution. Refer to incident reports and administrative transfer documents, including inmate opportunity to provide a written

statement and which describe plaintiff's verbally abusive, agitated, non-compliant and disorderly conduct.

18.    State the names and last known addresses of all persons who have been interviewed or questioned by you or on your behalf with regard to the facts alleged in the pleadings. In addition thereto, state:

    (a)    The date of each interview;

    (b)    The substance of each interview; and

    (c)    The names, last known addresses of all persons who have copies of a resume or transcript of each interview.

**Answer**: Objection to the extent the request seeks documents or information protected from disclosure by the attorney-client and/or attorney work product privileges. Without waiving this objection, persons identified in the reports and records are potential witnesses for trial. See incident and disciplinary reports and records relative to the subject-matter in the complaint. Defendants reserve the right to supplement this answer in accordance with a pre-trial order, if required.

19.    With reference to any report, memorandum or resume prepared by you or anyone acting on your behalf pertaining to any of the facts alleged or referred to in the pleadings, give the date of each such matter in writing and as to each date given, state:

    (a)    The name and last known address of the person or persons who prepared such writing, and the name and address, and identity of the employer of such person ore persons; and

  (b)  Whether such writing was prepared by you or on your behalf.

**Answer**: Objection to the extent the request seeks documents or information protected from disclosure by the attorney-client and/or attorney work product privileges. Without waiving this objection, persons identified in the reports and records are potential witnesses for trial. See incident, classification, disciplinary reports and records relative to the subject-matter in the complaint. Defendants reserve the right to supplement this answer in accordance with a pre-trial order, if required.

20. State whether you or anyone on your behalf has received any non-medical reports or records with regard to the allegations in the complaint. If, yes, state the following:

  (a)  The nature of each report or record;

  (b)  By whom each report was prepared; and

  (c)  At whose request they were prepared.

**Answer**: Objection to the extent the request seeks documents or information protected from disclosure by the attorney-client and/or attorney work product privileges. Without waiving this objection, see incident, classification, disciplinary reports and records relative to the subject-matter in the complaint.

21. Identify each and every person whom you believe will be called as a witness on your behalf at trial.

**Answer**: Persons identified in the reports and records are potential witnesses for trial. See incident and disciplinary reports and records relative to the subject-matter in the

complaint. Defendants reserve the right to supplement this answer in accordance with a pre-trial order, if required.

22.    Identify each and every document which you intend to rely upon for any purpose in this litigation, including but not limited to direct or cross-examination of any witness at deposition or at trial.

**Answer**:  Objection to the extent the request seeks documents or information protected from disclosure by the attorney-client and/or attorney work product privileges. Without waiving this objection, see incident, classification, disciplinary reports and records relative to the subject-matter in the complaint.

23.    If you had or heard any discussions with the Plaintiff regarding any allegation in the complaint, if so, describe such discussions in detail.

**Answer**: None.

24.    State, in specific detail, how defendants Carroll and Ballenger determined that Plaintiff engaged in conduct that warranted his placement in isolation confinement/pre-hearing detention on May 31, 2004.

**Answer**: Defendant Carroll had no personal knowledge or involvement with the inmate's classification decision at times relevant to the complaint. Defendant Belanger's assigned duties as a Shift Commander required separation of the inmate from the general population when the inmate's continued presence became a threat to staff, and the security or orderly operation of the institution.  Refer to incident reports and

administrative transfer documents, including inmate opportunity to provide a written statement and which describe plaintiff's verbally abusive, agitated, non-compliant and disorderly conduct.

25.    State, in specific detail, how the IBCC determined that Plaintiff should be classified to MAX/SHU on June 22, 2004, August 2004, and November 9, 2004.

**Answer:** Defendants Carroll and Stevenson had no personal knowledge or involvement with the inmate's classification decision at times relevant to the complaint. Defendant Simms was not a member of the I.B.C.C. and had no personal involvement with that part of the inmate's classification decision. Defendant Belanger was assigned duties as a Shift Commander required to separate inmate from the general population when the inmate's continued presence became a threat to staff, and the security or orderly operation of the institution.  Refer to incident reports and administrative transfer documents which describe plaintiff's verbally abusive, agitated, non-compliant and disorderly conduct.

26.    State in detail, why the IBCC has failed to adhere to the classification regulations, by refusing to entertain Plaintiff's classification appeal and grievances.

**Answer**:  Defendants Carroll, Stevenson, and Belanger had no personal knowledge or involvement with the I.B.C.C. meetings with the inmate. By way of further answer, plaintiff has received written reasons and basis for MTD recommendations and subsequent decision as a result of information presented to and considered by the IBCC. See incident, disciplinary records, and classification documents relative to the subject-matter in the complaint.

27.     State in detail why IBCC has refused to correct its inaccurate classification records or Plaintiff's June 22, 2004, August 2004, and November 9, 2004 classifications. That is, provide Plaintiff with valid specific reasons why he was classified to MAX/SHU.

**Answer**: Defendants Carroll, Stevenson, and Belanger had no personal knowledge or involvement with the I.B.C.C. meetings with the inmate. By way of further answer, plaintiff has received written reasons and basis for MTD recommendations and subsequent decision as a result of information presented to and considered by the IBCC. See incident, disciplinary records, and classification documents relative to the subject-matter in the complaint.

28.     State specifically the reasons why Plaintiff was not a meaningful opportunity to be heard by the MDT and IBCC, when Plaintiff was classified in August 2004, and on November 9, 2004.

**Answer**: Defendants Carroll, Stevenson, and Belanger had no personal knowledge or involvement with the I.B.C.C. meetings with the inmate. By way of further answer, plaintiff has received written reasons and basis for MTD recommendations and subsequent decision as a result of information presented to and considered by the IBCC. See incident, disciplinary records, and classification documents relative to the subject-matter in the complaint.

29.     Since Plaintiff's June 10, 2004 transfer to the SHU, how many times or how often has he received quality of life level review.

**Answer**: Defendants Carroll, Belanger and Stevenson had no personal knowledge or involvement with the inmate's classification decision at times relevant to the complaint. By way of further answer, plaintiff has received written reasons and basis for MTD recommendations and subsequent decision as a result of information presented to and considered by the IBCC. See incident, disciplinary records, and classification documents relative to the subject-matter in the complaint.

30.     Explain in detail DCC's quality of life levels, and how you determine what level inmates are placed on.

**Answer**: Defendants Carroll, Belanger and Stevenson had no personal knowledge or involvement with the inmate's classification decision at times relevant to the complaint. However, Defendant Simms explains that the positive reinforcement behavior modification inmate privilege program provides maximum security sentenced inmates levels of social privileges (i.e., amount of commissary items allowed to purchase per month, number of visits per month, number of phone calls per month) based upon the inmate's demonstration of pro-social behavior as measured by the accumulation or absence of staff reports regarding an inmate's behavior.

31.     Explain in detail why Plaintiff's yearly classification schedule was circumvented. That is, state why Plaintiff is being denied meaningful reviews (every 90 days as

prescribed by the classification regulations for inmates in SHU), whereby his quality of life level is increased to obtain more privileges, and to progress out of the SHU.

**Answer**: Defendants Carroll, Belanger and Stevenson had no personal knowledge or involvement with the I.B.C.C. meetings with the inmate. By way of further answer, plaintiff has received written reasons and basis for MTD recommendations and subsequent decision as a result of information presented to and considered by the IBCC in accordance with Bureau procedures. See incident reports, disciplinary records, and classification documents relative to the subject-matter in the complaint.

32.     Explain in detail why Plaintiff's yearly classification schedule was circumvented. That is, state why Plaintiff was classified on June 22, 2004, August 2004, and November 9, 2004 to maximum security (SHU) when his classification review was not scheduled until April 2005.

**Answer**:   Defendants Carroll, Belanger and Stevenson had no personal knowledge or involvement with the I.B.C.C. meetings with the inmate. By way of further answer, plaintiff has received written reasons and basis for MTD recommendations and subsequent decision as a result of information presented to and considered by the IBCC in accordance with Bureau procedures. See incident reports, disciplinary records, and classification documents relative to the subject-matter in the complaint.

33.     Does DCC's classification regulation or procedures incorporate a point system to determine an inmate's security classification, i.e., minimum, medium, medium-high, or maximum security classification levels? If yes, state the following:

      (a)      How many classification points did Plaintiff have when he was classified on April 1, 2004 to continue medium-high status in MHU:

      (b)      The precise number of classification points needed for an inmate to be placed on each of the (4) classification levels stated above; and

      (c)      How does an inmate obtain or accumulate points to be classified to medium-high and maximum security levels.

**Answer:** The Department of Correction inmate classification system incorporates a point system to assist in the determination of an inmate's security classification. Refer to the Delaware Department of Correction Reclassification Form-Risk Assessment sheets provided.

34.      Did the Department of Correction, DCC increase Plaintiff's classification points from his April 2004 classification, when he was classified to the SHU on June 22, 2004. If yes, state what disciplinary report or hearing verdict brought about his increase in classification points.

**Answer**: Defendants Carroll, Belanger and Stevenson had no personal knowledge or involvement with the I.B.C.C. meetings with the inmate. By way of further answer, plaintiff has received written reasons and basis for MTD recommendations and subsequent decision as a result of information presented to and considered by the IBCC in accordance with Bureau procedures. See incident reports, disciplinary records, and classification documents relative to the subject-matter in the complaint.

                                    STATE OF DELAWARE
                                    DEPARTMENT OF JUSTICE


/s/ Ophelia M. Waters
Ophelia M. Waters, I.D. #3879
Deputy Attorney General
Carvel State Building
820 N. French Street, 6th floor
Wilmington, DE 19801
Ophelia.Waters@state.de.us
Attorney for Defendants

Date: August 25, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2006, I electronically filed *Defendants' Answers to Plaintiff's Request for Interrogatories and Request for Production of Documents* with the Clerk of Court using CM/ECF. I hereby certify that on August 25, 2006, I have mailed by United States Postal Service, the document to the following non-registered participant: Jamah K. Grosvenor; SBI # 367677; Delaware Correctional Center; 1181 Paddock Road; Smyrna, DE 19977.

.

**STATE OF DELAWARE
DEPARTMENT OF JUSTICE**

/s/ Ophelia M. Waters
Ophelia M. Waters, I.D. #3879
Deputy Attorney General
820 North French Street, 6th Floor
Wilmington, Delaware 19801
(302)577-8400
ophelia.waters@state.de.us