THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMAH K. GROSVENOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 05-033-GMS |
| v. | ) | |
| | ) | |
| THOMAS CARROLL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**STATE DEFENDANTS' MEMORANDUM OF
POINTS AND AUTHORITIES IN
SUPPORT OF THEIR MOTION TO DISMISS/SUMMARY JUDGMENT**

**MEMORANDUM OF LAW**

**I.    Statement of Facts**

1.    Plaintiff is an inmate in the custody of the Delaware Department of Correction. He is currently housed in the Delaware Correctional Center, Smyrna, Delaware.

2.    Defendant Thomas Carroll is the Warden at the Delaware Correctional Center.

3.    Defendant Jim Simms is a Counselor and member of the Multi-Disciplinary Team (MTD). Defendant Simms was not a member of the initial classification team that classified plaintiff to the security housing unit (SHU).

4.    Defendant Jayme Jackson is the chairperson of the Institutional Based Classification Committee (IBCC) of the Delaware Correctional Center.

5.    Defendant Joseph Belanger is a Sergeant at the Delaware Correctional Center.

6.    Defendant Paul Wallace is a Sergeant at the Delaware Correctional Center.

7.      On or about may 31, 2004, plaintiff Jamah Grosevenor received a disciplinary write-up charging him with the institutional rule violations of assault, unlawful demonstration, disorderly and threatening behavior, inciting to riot, and failure to obey an order. See Incident Report 1012413 attached as Exhibit A. These charges stem from an extremely serious incident involving several inmates who attempted to interfere with the correctional staff while they were acting in accordance with their duties. Id.

8.      Plaintiff Grosevenor and several other inmates surrounded the correctional staff, closing off all exits and vision contact with other staff. See Incident Report 1012416 attached as Exhibit B. While so doing and refusing to lock in the cells, Grosvenor and others yelled expletives "we ain't f—king going nowhere." Id.

9.      Security Staff arrived at the location and quelled the disturbance. Id. The inciting inmates, including Grosvenor were transferred to the isolation unit pending further disciplinary action. See Administrative Transfer Report attached as Exhibit C.

10.     On June 1, 2004, the Multi Disciplinary Team (MTD) completed an interview/classification with Grosvenor as soon as practical after the disturbance. The MTD members recommended an override to maximum security citing the seriousness of the incident and the pending investigation. At the time of that classification, Grosvenor had a risk assessment score (RAS) of 14. Typically, a risk assessment, without the consideration of other relevant and compelling factors, justifies a medium security housing placement.  However, considering the severity of his behavior on May 31, 2004, the Institutional Based Classification Committee (IBCC) approved the override to maximum security placement. See Jackson Affidavit  attached as Exhibit D.

11.   On October 18, 2004, Grosvenor's classification was reviewed. At the time of that review, his RAS was 18 points, requiring maximum security classification. Id.

12.   When Grosvenor appeared for his review of classification on January 28, 2005, with a request for an override to continue maximum security based on a pattern of negative behavior, his RAS was 16 points, thus warranting a medium security placement. At the time of that review, Grosvenor's correctional counselor wrote," He [Grosvenor] is still exhibiting continuous negative behavior." Id.

13.   On July 19, 2005, Grosvenor was again reviewed with a recommendation for medium/high security, rescinding maximum security. At that review, Grosvenor's counselor noted that he had remained write-up free for nearly a year and recommended a flow down process. At the July 19, 2005 classification review, an override was not required. Grosvenor continues to process through the classification system as appropriate within the guidelines and decision-making process for the placement to the least restrictive levels of security and custody needed to ensure the safety of the public, staff, and other inmates. Id.

**II.       Standard and Scope of Review**

A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c).Where the moving party produces an affidavit or other sufficient evidence of facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial and the burden shifts, then the non-moving party may not rest on its own pleadings, but

must provide evidence showing a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party assumes the initial burden to identify evidence that demonstrates the absence of a genuine issue of material fact. *Walters ex rel. Walters v. General Motors, Corp.*, 209 F. Supp.2d 481, 484 (W.D.Pa 2002). Once the moving party meets its burden, then the burden shifts to the non-moving party to demonstrate material issues of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-moving party must set forth "specific facts showing that there is a genuine issue for trial ⋯" or the factual record will be taken as presented by the moving party and judgment will be entered against the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party may not rest upon mere denials of the facts identified by the moving party, or upon the vague argument that the record contains facts sufficient to support its claims. *Childers v. Joseph*, 842 F.2d 689 (3d Cir. 1987). Moreover, the non-moving party may not plainly substitute the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). As an alternative, the non-moving party must point out in the summary judgment record evidence that creates a genuine issue of material fact. *See Celotex Corp. v. Catrett*. The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). If the party responding to the motion fails to make a sufficient showing on an element of his case with respect to which he has the burden of proof, summary judgment must be granted. *Omnipoint Comm. Enters., L.P. v. Newtown Township*, 219 F.3d 240, 242 (3d Cir. 2000).

### III. Legal Argument

#### A. Merits of the Argument

In order to state a claim under § 1983, the initial inquiry must center on (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of a right secured by the Constitution and laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986); *West v. Atkins*, 487 U.S. 42, 48 (1988). Instantly, State Defendants offer no dispute that their actions, if any, relating to plaintiff's alleged section 1983 claims were performed under color of state law. However, State Defendants indeed dispute that plaintiff has demonstrated sufficient facts from which a reasonable jury could conclude that the Defendants' conduct constituted a violation of his constitutional rights.

#### B. Fourteenth Amendment Due Process

To state a claim for a violation of the Fourteenth Amendment Due Process Clause, a plaintiff must allege: (1) that he or she was deprived of a protected liberty or property interest; (2) that this deprivation was without due process; (3) that the defendant subjected him, or caused him to be subjected to this deprivation without due process; (4) that the defendant was acting under color of state law; and (5) that he or she suffered an injury as a result of this deprivation without due process. *Sample v. Diecks*, 885 F.2d 1099, 1113 (3d Cir.1989).

Plaintiff alleges in his complaint that state officials deprived him of liberty and property without affording him the procedural safeguards of due process. (D.I.2, Complt., and D.I.23, Am. Cmplt.). In particular, Plaintiff alleges that Defendants Carroll and

Belanger participated in his "arbitrary and capricious" placement in isolation. (D.I.2, cmplt.). According to Plaintiff, Defendants Carroll and Belanger ordered him to "transfer to isolation confinement/ pre-hearing detention (ISO) without giving him notice of any charges being brought against him in the form of a write-up or disciplinary report." Id. He goes on to complain that due to his confinement in isolation, he was unable to participate in a "stress management group which started the following week after the incident." In addition, plaintiff complains that he was on a list to get a job in the medium housing unit (MHU) kitchen considering that he had not received a rule infraction write-up for nearly a year prior to the incident. In essence, plaintiff lost the ability to earn "good-time" credits after he was transferred to a more restrictive housing unit. Id. Specifically, Plaintiff alleges that as a result of his "arbitrary and capricious" placement in isolation confinement/pre-hearing detention by defendants' Carroll and Belanger, he has wrongfully lost his opportunity to work in the prison.

### 1. Deprivation of protected liberty or property interest required.

The Fourteenth Amendment of the United States Constitution declares that no "State [shall] deprive any person of life, liberty, or property, without due process of law. . . ." Accordingly, a "liberty interest" of constitutional dimension may not be abrogated by governmental action without certain procedural safeguards. U.S. Const. Art. XIV. Such a "liberty interest" may be derived from one of two sources: The interest may be of such a fundamental nature that it inheres in the Constitution itself or it may be created by state law. *Hewitt v. Helms*, 459 U.S. 460, 466 (1983) (citing *Meachum v. Fano,* 427 U.S. 215, 223-27, *reh. denied* 429 U.S. 873 (1976)).

### 2. Liberty interest in prison classification or placement required.

A mere transfer of a prisoner to a more restrictive custody level for a short period of time does not involve a deprivation of a constitutional right. *SeeBlizzard v. Hastings*, 886 F.Supp. 405 (D.Del.1995) ("[R]eclassification or transfer of an inmate to a more restrictive environment does not implicate a liberty interest protected by the Fourteenth Amendment. . . .Furthermore, this court has grave doubts that a liberty interest can be found in Delaware's statutes and regulations. . . ."); *Brown v. Cunningham*, 730 F.Supp.612, 615 (D.Del.1990).

Plaintiff, disgruntled that he was charged with the disciplinary offenses, now asserts that his disciplinary hearing "did not meet applicable due process standards and the hearing was not provided in the manner prescribed by the Delaware Correctional Center's (DCC) Code of Penal Discipline."(See, D.I.2). He rationalizes his behavior with unsubstantiated allegations that charges were "fabricated and falsified," he was deprived an impartial or unbiased hearing officer, and was arbitrarily transferred to isolation and then classified to the Segregated Housing Unit (SHU). Id. The Delaware District court has held time and again such classifications do not create interest protected by the Due Process Clause:

> An inmate's interest in a particular security classification or in being assigned to a particular institution is not an interest protected by the Due Process Clause. Even if the transfer works an adverse change in the conditions of confinement, as long as the conditions do not otherwise violate the U.S. Constitution, the transfer does not rise to the level of a constitutional claim.

*Carrigan v. State of Delaware*, 957 F. Supp. 1376, 1386 (D. Del. 1997) (citations omitted), *see also, Jackson v. Brewington-Carr*, 1999 WL 27124 (D. Del. 1999) (Delaware statutes and regulations do not provide inmates with a liberty interest in

remaining free from administrative segregation or from a particular classification; *Ross v. Snyder*, 239 F. Supp.2d 397, 400-401 (D. Del. 2002) (same).

To determine whether segregation of an inmate from the general population involves the deprivation of a state-created liberty interest protected by the Due Process Clause of the Fourteenth Amendment, the segregation must impose an "atypical and significant" hardship on the inmate in "relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995); *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir.1997).

Plaintiff has not demonstrated that the conditions he experienced in administrative custody imposed upon him any "atypical and significant hardship." *Sandin*, 515 U.S. at 484-85; *Griffin*, 112 F.3d at 706. Moreover, placement of Plaintiff in administrative segregation for a period not exceeding 15 days is not atypical and did not deprive him of a liberty interest. *See Griffin*, 112 F.3d at 708 (fifteen months in administrative segregation without a hearing did not deprive prisoner of liberty interest). Finally, the failure to hold a hearing prior to an inmate's placement in administrative custody is not a violation of procedural due process guaranteed by the United States Constitution. *Griffin*, 112 F.3d at 706. The Supreme Court has concluded that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). For instance, the burden of proof at a disciplinary hearing does not have to be beyond a reasonable doubt, there is no right to counsel, and evidence that would be excluded in an ordinary prosecution can be used. *Id.*; *see Rusher v. Arnold*, 550 F.2d 896, 899-901 (3d Cir. 1977). Because Plaintiff cannot establish the first essential element of a

Fourteenth Amendment claim, i.e., that he was deprived of a protected liberty interest, summary judgment must be granted as to his claims arising from his placement in administrative segregation. *Sample v. Diecks*, 885 F.2d at 1113.

### 3. Property interest or "legitimate entitlement" to prison job required.

Additionally, Plaintiff alleges that Defendants Carroll and Belanger violated his Fourteenth Amendment Due Process rights when he lost his opportunity for a job in the MHU kitchen. (D.I. 2). Plaintiff did not have a liberty interest in a prison job because he was eligible to accrue good time benefits through such employment. The United States District Court of Appeals for the Third Circuit has held, "the expectation of keeping a prison job does not amount to a property or liberty interest entitled to protection under the due process clause." *See Bryan v. Werner*, 516 F.2d 233, 240 (3d Cir. 1975). Indeed, neither the Due Process Clause nor Delaware law guarantees the right to earn good time credits. *See Abdul-Akbar v. Dep't of Corrections*, 910 F. Supp. 986, 1003 (D. Del. 1995), *aff'd* 111 F.3d 125 (3d Cir. (Del.) Mar. 31, 1997). Plaintiff does not have a constitutionally protected property interest in his job. He was reclassified to a more restrictive security area and lost his prison job because his behavior and risk assessment warranted the classification. (Exhibit D). In order to have a property interest, a person must have more than a unilateral expectation or an abstract need or desire. Rather, he must have a legitimate entitlement. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Plaintiff has not cited to any state or federal statute or regulation entitling him to a job while incarcerated. *See James v. Quinlan,* 866 F.2d 627, 629-630 (3d Cir.1989), *cert. denied,* 493 U.S. 870 (1989). Under controlling case law, DCC and other correctional

facilities have discretion in what, if any, inmate job assignments are made. An inmate's expectation of obtaining or keeping a particular prison job does not amount to a property or liberty interest protected directly under the constitution. Moreover, there is nothing in the relevant statute, tit 11 DEL. CODE section 6532[1] which supports plaintiff's assertion that he has a property or liberty interest exists in his prison job or that he has a "legitimate entitlement" to such a job. For the foregoing reasons, plaintiff's Fourteenth Amendment Due Process claim based on loss of his inmate job should be dismissed pursuant to Fed. R. Civ. P. 56(c) as there is no genuine issue of material fact and defendants are entitled to a judgment as a matter of law.

### C. Grosvenor's Privacy Act Claim

"To state a claim for money damages under the Privacy Act, a plaintiff must assert that an agency failed to maintain accurate records, that it did so intentionally or willfully, and consequently, that an 'adverse' 'determination [wa]s made' respecting the plaintiff." *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 583 (D.C.Cir.2002). Typically, in such cases, it is "feasible, necessary and proper, for the agency and, in turn, the district court to determine whether each filed item of information is accurate." *Id.* at 583 (quoting *Doe v. United* States, 821 F.2d 694 (D.C.Cir.1987)). In this present action Plaintiff alleges that defendants transferred and classified him to isolation on pre-hearing detention and to SHU segregated unit, based on fabricated and falsified prison records. (D.I. 2). He alleges that the transfer and reclassification came about in retaliation for

---

[1] 11 *Del. C.* §6532(a), in pertinent part reads, "The Department *may* establish compulsory programs of employment, work experience and training for all physically able inmates. . . ." (emphasis added).

"practicing his guaranteed right to free speech." (D.I. 2). He alleges that his transfer deprived him of his entitlement to earn good-time credits.

However, Plaintiff does not identify any inconsistent record that could demonstrate that his that charges against him were falsified and fabricated. Moreover, he cannot demonstrate that prison officials classified him based on false and/or inaccurate records. Plaintiff does not point to any evidence to support his claim that Defendants Carroll, Belanger, Stevenson, Simms, Jackson or Wallace intentionally or willfully falsified documents, and as a result of the false documents, transferred Plaintiff to a more restrictive housing area. In fact, plaintiff admits that he, along with approximately fifteen (15) other inmates gathered around a correction officer and basically interfered with his supervision of another inmate.

### D.     First Amendment and Retaliation Claim

Plaintiff claims that his transfer to administrative segregation and continued confinement in the Security Housing Unit (SHU) was done in retaliation for exercising his First Amendment right to "free speech." (D.I.2). In *Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001), the Third Circuit held that a prisoner must prove that the conduct that led to the alleged retaliation was constitutionally protected, that he suffered some "adverse action" at the hands of prison officials, and that exercise of the constitutional right was a substantial or motivating factor in the challenged action. *See id.*, at 333-34. Prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons that are reasonably related to a legitimate penological interest. *Id.* at 334.

In the instant case the decision to place Plaintiff in administrative segregation was based on Plaintiff's involvement in inmate disturbance in the facility. Plaintiff and approximately 15 other inmates presented an immediate threat to the safety and security of staff and the institution based on their misconduct on May 31, 2004. The decision to transfer the plaintiff, along with others, was based on a legitimate penological interest. Also, as a result of plaintiff's assessment risks and needs, the decision to continue plaintiff in a more restricted housing unit was conducive to a custody level appropriate to safety and effectively monitor and control his behavior.

### E.  No Personal Involvement or Respondeat Superior Liability

Plaintiff's claim against Evelyn Stevenson does not demonstrate any personal involvement by him. *Bracey v. Grenoble*, 494 F.2d 566 (3d Cir. 1974). Cleary it is Plaintiff's burden to identify how Defendant Stevenson participated in, directed, or acquiesced to the events of the plaintiff complaint. *Gay v. Petscok*, 917 F.2d 768, 771 (3d. Cir. 1990). In this case, plaintiff fails to meet his burden. He has not identified any involvement by Stevenson. He merely makes the general allegation in his statement of claim that "Evelyn Stevenson is the chairperson of the I.B.C.C.

The Third Circuit Court of Appeals has held that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 846 F.2d 1195, 1207 (3d Cir. 1988); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Personal involvement can be established through allegations of either personal

direction or actual knowledge and acquiescence; however, such allegations must be made with particularity. *See Rode*, 845 F.2d at 1207.

Plaintiff does not allege in his complaint that Evelyn Stevenson had a direct role with his placement in the isolation on pre-hearing detention for a period of 11 days. Aside from the fact that Evelyn Stevenson has supervisory capacity over counselors, Plaintiff offers nothing to demonstrate that she participated in or approved of a risk to his health or safety. Indeed, in order to establish supervisory liability, any misconduct of the correction officers must be "affirmatively linked" to the actions or inactions of the Administrative Defendant. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976). It is without a doubt, Evelyn Stevenson did not participate in the classification decision made relevant to plaintiff's complaint. *See Stevenson Affidavit* attached as Exhibit E.

### F.    CONCLUSION

WHEREFORE, based on the foregoing reasons, Plaintiff fails to state a claim upon which relief may be granted. Accordingly, State defendants respectfully request that the Court grant judgment in their favor as to all claims and against the plaintiff.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

 /s/ Ophelia M. Waters
Ophelia M. Waters, I.D. #3879
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th floor
Wilmington, DE 19801
(302) 577-8400
Attorney for State Defendants

## *CERTIFICATE OF SERVICE*

I hereby certify that on March 2, 2007, I electronically filed *State Defendants' Memorandum of Points and Authorities in Support of their Motion to Dismiss/Motion for Summary Judgment* with the Clerk of Court using CM/ECF. I hereby certify that on March 2, 2007, I have mailed by United States Postal Service, the document to the following non-registered party: Jamah K.Grosvenor, SBI#367677, Delaware Correctional Center, 1181 Paddock Road, Smyrna, DE 19977.

/s/ Ophelia M. Waters
Deputy Attorney General
Department of Justice
820 N. French St., 6th Floor
Wilmington, DE 19801
(302) 577-8400
ophelia.waters@state.de.us