IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAMAH K. GROSVENOR,        ) | |
|                            ) | |
|     Plaintiff,             ) | |
|                            ) | C.A. No. 05-033-GMS |
|     v.                     ) | |
|                            ) | |
| THOMAS CARROLL, et al.,    ) | |
|                            ) | |
|     Defendants.            ) | |

### AFFIDAVIT OF JAYME JACKSON

I, Jayme Jackson having been duly sworn by law, do hereby depose and state as follows:

1.  I am employed by the State of Delaware Department of Correction ("DOC") at the Delaware Correctional Center ("DCC") Smyrna, Delaware as Chairperson of the Institutional Based Classification Committee. ("IBCC"). I have been employed by the DOC since May 1, 1990 and have held my present position since December, 2002.

2.  I have read the plaintiff's complaint and dispute the allegations therein.

3.  When an inmate receives a Level V sentence, an initial classification is completed to determine the inmate's security housing, treatment and programming placement. The Level V inmate's next review date is based on the length of his sentence.

4.  A Level IV sentenced inmate is also reviewed for appropriate security housing although he is not classified.

5.  Lt. Ricky Porter and I perform the initial classifications at the DCC. The Multi-Disciplinary Team ("MDT") is composed of the counselor assigned to the building,

an inmate, and depending on the inmate's housing unit either Lt. Thomas Seaford or Lt. Porter.

6. On May 31, 2004, the plaintiff was written up in an Incident Report for Assault, Disorderly and Threatening Behavior, Inciting a Riot, Demonstration (strike) and Failure to Obey an Order. The incident was extremely serious in nature. The Incident Report states that the plaintiff was directly involved with several other inmates of attempting to interfere with the Correctional Staff while acting in accordance with their duties. The plaintiff and several other inmates surrounded the Correctional Staff blocking all exits and obstructing their vision contact while yelling, "F_ _ _ you guys, we are not going anywhere."

7. The plaintiff and the other inmates involved were immediately placed back under control by security and transferred to isolation. The MDT completed an interview/classification with the plaintiff on June 1, 2004. The MDT recommended an override to Maximum Security citing the seriousness of the incident and the pending investigation. Per Bureau Policy a request for an override was required as his Risk Assessment Score ("RAS") was 14. A RAS score of 14 dictates Medium Security Housing as noted in the Classification Policy. The override/classification was approved by the IBCC which also noted the seriousness of the incident.

8. On October 18, 2004, plaintiff's classification was reviewed where he received a RAS of 18 requiring a Maximum Security Classification. On January 28, 2005, the plaintiff's classification was again reviewed with a request for an override to continue Maximum Security. The counselor claimed that the plaintiff "was still

exhibiting negative behavior." Plaintiff's RAS at this classification was 16 which requires a Medium Security Classification.

9. On July 19, 2005, the plaintiff was reviewed with a recommendation for Medium High Security rescinding Maximum Security. The counselor noted that the plaintiff had not been written up for almost a year and recommended a flow down process. An override was not required at this classification. The plaintiff has continued to process through the classification procedure. Based on the seriousness of the incident followed by the appropriate classification the plaintiff's classification to Maximum Security was completed within the Policy and Procedure of the Bureau of Prisons.

10. I have made these statements based upon my personal knowledge, specialized training and experience as an employee of the DOC.

_____
Jayme Jackson

SWORN AND SUBSCRIBED before me this __2__ day of March, 2007.

_____
Notary