IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMAH K. GROSVENOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Action No. 05-033-GMS |
| | ) | |
| THOMAS CARROLL, WARDEN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM**

## I. INTRODUCTION

The plaintiff Jamah K. Grosvenor ("Grosvenor"), a prisoner incarcerated at Delaware Correctional Center ("DCC"), Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983. He appears *pro se* and was granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (D.I. 4.) The complaint alleges violations of his right to due process and retaliation for exercising his First Amendment rights. Now before the court is State Defendants Thomas L. Carroll, Captain Joseph Belanger, Jim Simms, Evelyn Stevenson, Jayme Jackson, and P. Wallace's (collective "State defendants") motion for summary judgment.[1] (D.I. 27). Grosvenor did file a response to the motion. For the reasons that follow, the court will grant the motion in part and deny as moot the remainder of the motion.

## II. THE COMPLAINT

Following screening of the complaint, Grosvenor was allowed to proceed against the

---

[1] The defendants Lt. Seacord and Cindy Atallian did not join in the motion since they had not been served at the time the motion was filed. The motion was filed on March 2, 2007, they were both served on August 29, 2007, and their answer was filed on October 17, 2007. (D.I. 32, 33, 35.)

defendants Warden Thomas Carroll ("Warden Carroll"), Captain Joseph Belanger ("Belanger"), Jim Simms ("Simms"), Evelyn Stevenson ("Stevenson") and Jane/John Doe Defendants. The Doe defendants were subsequently identified as Jayme Jackson ("Jackson"), Sgt. P. Wallace ("Wallace"), Lt. Seacord ("Seacord"), and Cindy Atallian ("Atallian"). (D.I. 23, 24, 26, 29.)

The allegations of the complaint are as follows: On May 31, 2005, Grosvenor and several other inmates witnessed a confrontation between C/O Carlton Adams ("C/O Adams") and inmate Vincent Quattlebaum. Grosvenor and other inmate witnesses tried to explain to correctional officers who came to the scene that C/O Adams failed to follow proper procedures, but they were ignored. Following lunch, all Medium-High Housing Unit ("MHU") inmates were escorted to the MHU building and thirteen of the inmates, including Grosvenor, were identified by C/O Adams. Grosvenor was handcuffed by Belanger and taken to a visiting room where he remained for three hours. Later, he was transferred to isolation confinement in the Security Housing Unit ("SHU"). Grosvenor alleges that he was taken to SHU in retaliation for speaking out against C/O Adams' failure to follow DCC rules, regulations, and property procedures. He further alleges that he has the right to free speech under DCC inmate rules and the First Amendment. Grosvenor alleges that Belanger and Warden Carroll violated his due process rights when they ordered his transfer to isolation without a write-up or disciplinary report and he remained in isolation for eleven days.

Grosvenor alleges that on June 10, 2004, the Classification Committee, composed of the Multi-Disciplinary Team ("MDT") and the Institutional Base Classification Committee ("IBCC"), transferred him to SHU. Simms, Seacord, and Wallace are members of the MDT while the IBCC members are Stevenson, Atallian, and Jackson. Grosvenor alleges that his

-2-

placement in SHU was based upon a false or invalid disciplinary report and transfer order, all in violation of his right to due process and his First Amendment rights. He also alleges that there was a retaliatory fabrication of his prison records in violation of the Privacy Act and a retaliatory reclassification and transfer in violation of his First Amendment rights.

Grosvenor alleges that the Classification Committee's records are inaccurate and that he sent several letters concerning the inaccurate record to Simms who, in addition to being a MDT member, is also Grosvenor's counselor, but Simms did not respond. Grosvenor was reclassified in August 2004, again to SHU. Grosvenor alleges that he had only 16 points, but that Simms advised Grosvenor he had 18 points which indicated a SHU housing classification. Grosvenor was classified once again on November 11, 2004, and again remained at SHU. He alleges that he was not given a reason for the decision that he remain in SHU, the information is forged or falsified, and he was not due for reclassification until April 2005.

The court screened the original complaint. Its March 30, 2006 Memorandum dismissed the claims against the defendants Deputy Warden Burris and the DCC. (D.I. 6 at 6, 9.) The Memorandum also found that Grosvenor's due process claims had no "arguable basis in law or in fact" and dismissed the claims as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). The Memorandum and Order allowed Grosvenor to proceed with the retaliation claims.

The March 30, 2006 Order, that allowed Grosvenor to proceed only with his retaliation claims, failed to mention dismissal of the due process claims.[2] Apparently believing due that the due

---

[2]So there is no confusion, the court will enter an order that the due process claim has been dismissed as outlined in the March 30, 2006 Memorandum. The court will deny as moot that portion of State defendants' pending motion that seeks summary judgment on the due process

-3-

process claim remained viable, State defendants move for summary judgment on the previously

dismissed due process issue. (D.I. 28, ¶ III.B.) They also move for summary judgment on a

privacy act claim and Grosvenor's First Amendment and retaliation claims. Finally, summary

judgment is sought on behalf of Stevenson on the basis that she has no personal involvement or

respondeat superior liability. Grosvenor did not respond to the motion.

## III. RELEVANT FACTS

The undisputed facts are that on May 31, 2004, Grosvenor received a disciplinary

write-up charging him with the institutional rule violations of assault, unlawful

demonstration, disorderly and threatening behavior, inciting to riot, and failure to obey an

order. (D.I. 28, ex. A.) The report states that Grosvenor, along with several other inmates, were

disorderly and gathered around a correctional officer who was attempting to subdue another

inmate. *Id.* At exs, A, B. One of the inmates slammed the door shut and the inmates were

swearing and yelling expletives such as "we ain't f—king going nowhere." *Id.* The inmates

were escorted to the chow hall without further incident. *Id.* at ex, B. As a result of his actions,

Grosvenor, as well as other inmates involved in the incident, was transferred to the isolation unit

pending further disciplinary action. *Id.* at ex. C. On June 1, 2004, the MDT completed an

interview/classification with Grosvenor. *Id.* at ex. D. The MDT members recommended an

override to maximum security due to the seriousness of the incident and the pending

investigation. *Id.* At the time of the classification, Grosvenor had a risk assessment score of 14

which dictates a MHU housing assignment. *Id.* The override was approved by the IBCC which

noted the seriousness of the incident. *Id.*

---

issue.

Jackson is the classification officer and counselor supervisor, as well as the chairperson

of the IBCC, for inmates housed in MHU. *Id.* When Jackson has been absent, Atallian has acted

as the IBCC chairperson. *Id.* at ex. E. Stevenson is the classification officer and counselor

supervisor and also the chairperson for inmates housed in the medium and minimum compound.

*Id.* She was not involved in Grosvenor's classification procedure during the relevant time period.

*Id.*

On October 18, 2004, Grosvenor's classification was reviewed. *Id.* at ex. D. At that

time, his risk assessment score was 18 points which required a maximum security classification.

*Id.* Grosvenor's classification was again reviewed on January 28, 2005, with a request for an

override to continue maximum security based on a pattern of Grosvenor's negative behavior. At

that time, his risk assessment score was 16 points, which required a medium security placement.

*Id.*

On July 19, 2005, Grosvenor was again reviewed and he was recommended for a

medium/high security classification which rescinded the maximum security classification. *Id.* It

was noted that Grosvenor had remained write-up free for nearly a year and his counselor had

recommended a flow down process. *Id.* An override for the classification was not required. *Id.*

Grosvenor continues to process through the classification system. *Id.*

## IV.  STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the party is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c); *see also Chimie v. PPG Indus. Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005).

Thus, summary judgment is appropriate only if the party shows there are no genuine issues of material fact that would permit a reasonable jury to find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit. *Id.* at 247-48. An issue is genuine if a reasonable jury could possibly find in favor of the non-moving party with regard to that issue. *Id.* at 249. The moving party bears the initial burden of demonstrating that there are no genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Additionally, the evidence is to be viewed in the light most favorable to the nonmoving party, with all doubts resolved against entry of summary judgment. *Blackburn v. United Parcel Serv.*, 179 F.3d 81, 91 (3d Cir. 1999).

The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. at 322.

## V. DISCUSSION

### A. Retaliation

Grosvenor alleges that the State defendants retaliated against him when they transferred and reclassified him to isolation in pre-trial detention, and then to SHU, for practicing his right to free speech. As part of that retaliation Grosvenor alleges his prison records were fabricated and falsified. State defendants move for summary judgment on the issue of a privacy act claim, but the court does not construe such a claim in the complaint. Rather, the privacy act issue is part of

Grosvenor's retaliation claim. Therefore, that portion of the State defendants' motion seeking summary judgment on a privacy act claim issue will be denied as moot.

State defendants also move for summary judgment on Grosvenor's retaliation claim. They contend they are entitled to summary judgment because the decision to place Grosvenor in administrative segregation was based upon his involvement in the May 31, 2004 inmate disturbance. State defendants argue that the decision to transfer Grosvenor, along with others, was based upon a legitimate penological interest. They further argue that the decisions to continue him in a more restricted housing unit was conducive to a custody level appropriate to effectively monitor and control his behavior.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon,* 897 F.2d 103, 111-12 (3d Cir. 1990). It has long been established that the First Amendment bars retaliation for protected speech. *See Crawford-El v. Britton,* 523 U.S. 574, 592 (1998); *Milhouse v. Carlson,* 652 F.2d 371, 373-74 (3d Cir. 1981). Proof of a retaliation claim requires that Grosvenor demonstrate (1) he engaged in protected activity; (2) he was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *see also Allah v. Seiverling*, 229 F.3d 220 (3d Cir. 2000) (a fact finder could conclude that retaliatory placement in administrative confinement would "deter a person of ordinary firmness from exercising his First Amendment rights" (citations omitted)). "[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may

-7-

still prevail by proving that they would have made the same decision absent the protected
conduct for reasons reasonably related to a legitimate penological interest." *Id.* at 334.

Even if Grosvenor had demonstrated that his speaking out was a substantial motivating
factor in the State defendants' decision to place him in isolation and later in SHU, State
defendants provided evidence that their actions were based upon a legitimate penological
interest. Grosvenor was involved in an incident that the prison administration considered
"extremely serious in nature." (D.I. 28, ex. D.) There were reported violations of assault,
demonstrations, disorderly or threatening behavior, inciting a riot, and failing to obey an order.
*Id.* at exs. A, B. Grosvenor was sent to isolation for being disorderly and threatening. He
remained in SHU based upon the seriousness of the incident, but was given periodic
classification reviews and, when he had not been written for almost a year, he was reclassified
from SHU to the lower security classification of MHU. Given the seriousness of the incident, the
court finds that State defendants have proven that Grosvenor's transfer to isolation and resultant
SHU classification reasonably related to a legitimate penological interest, namely to effectively
monitor and control Grosvenor's behavior for the security of the institution. Therefore, the court
will grant the defendants Carroll, Belanger, Simms, Stevenson, Jackson, and Wallace's motion
for summary judgment on the retaliation issue.

## B. Personal Involvement

State defendants argue that Grosvenor's claims against Stevenson do not demonstrate any
personal involvement on her behalf. Grosvenor alleges that Stevenson is the chairperson of the
IBCC. Nothing in the record contravenes Stevenson's affidavit that she was not involved in
Grosvenor's classification procedure during the relevant time period.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003)(quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). After reviewing the record, the court finds that Stevenson has demonstrated an absence of material fact, and there is insufficient evidence to enable a jury to reasonably find for Grosvenor on the issue of whether Stevenson had any personal involvement in the alleged constitutional violations. Therefore, the court will grant the State defendants' motion for summary judgment on the issue of personal involvement.

## VI.    CONCLUSION

For the above stated reasons the court will grant the defendants Carroll, Belanger, Simms, Stevenson, Jackson and Wallace's motion for summary judgment as to the retaliation and personal involvement issues and deny as moot the remaining issues raised in the motion. The court will dismiss the due process issue as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). Only Lt. Seacord and Cindy Atallian remain as defendants. An appropriate order will be entered.

_____, 2008

CHIEF, UNITED STATES DISTRICT JUDGE

Wilmington, Delaware

**FILED**

FEB 1 4 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAMAH K. GROSVENOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 05-033-GMS |
| | ) |
| THOMAS CARROLL, WARDEN, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

At Wilmington this 12th day of _Feb._, 2008, for the reasons set forth in the Memorandum issued this date;

1. As set forth in the court's Memorandum dated March 30, 2006, Grosvenor's due process claims have no arguable basis in law or in fact and are **dismissed** as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

2. State defendants Thomas L. Carroll, Captain Joseph Belanger, Jim Simms, Evelyn Stevenson, Jayme Jackson and P. Wallace's motion for summary judgment (D.I. 27) is **granted** as to the retaliation and personal involvement issues and the remainder of the motion is **denied** as **moot**. There are no remaining claims against Thomas L. Carroll, Captain Joseph Belanger, Jim Simms, Evelyn Stevenson, Jayme Jackson and P. Wallace and they are dismissed as defendants. Lt. Seacord and Cindy Atallian remain as defendants.

CHIEF, UNITED STATES DISTRICT JUDGE

FILED

FEB 1 4 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE